■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD HAZEN, Appellant. — Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered January 15, 1982, upon a verdict convicting defendant of

the crime of assault in the third degree. Defendant was indicted for the crime of assault in the second degree. The indictment charged defendant with assaulting his wife, Jane Hazen, on July 28, 1981. A jury trial ensued, wherein the following was elicited. As a prelude to the alleged assault on July 28, 1981, defendant, apparently distressed at his wife's departure a few days earlier and her suspected infidelity, and frustrated at the malfunctioning of a water pump, rampaged through his house, smashing windows, mirrors and other glass objects. He then drove to the house of his mother-in-law, where he visited his children. The route back to his house led him past the house of his wife's male companion, where he spotted the man's pickup truck parked in the driveway. Jane Hazen and her companion were seated in the cab. Defendant, after parking his truck, approached the passenger side, where his wife was seated. Defendant asked her to accompany him so they could talk. She complied and they proceeded to defendant's house. Jane Hazen testified that, during the course of the ride home, defendant slapped her a couple of times. Upon arriving at his house, defendant struck his wife in the face, breaking her nose. He then pulled her around the house by her hair showing her the damage he had wrought earlier in the evening. Defendant, still grasping his wife's hair, brought her into the bathroom where, using electric clippers, he proceeded to shear off her hair, which, to him, symbolized her infidelity. Jane Hazen testified that "he said that if I fought him, that I wouldn't leave there alive, and if I didn't fight him, I would leave there alive". Defendant also informed her that he was going to "rape" her. During the course of the hair-cutting incident, Mrs. Hazen's head came into contact with broken glass from a mirror that defendant had smashed during his earlier rampage, causing a laceration behind her ear that later required sutures. While she attempted to curtail the bleeding with a towel, defendant led her by the ear into the bedroom where they engaged in sexual intercourse. Out of fear, Mrs. Hazen testified, she offered no resistance. Since the bleeding continued after this, defendant drove his wife to the hospital where she was examined and treated. The trial court submitted the charge of assault in the second degree, as well as the lesser included offense of assault in the third degree, to the jury. Defendant was found guilty of assault in the third degree and sentenced to a definite sentence of imprisonment for a period of one year. Defendant appeals. Initially, defendant contends that the evidence was not legally sufficient to establish intent to cause physical injury and actual physical injury, requisite elements of the crime of assault in the third degree as charged. The record belies this contention. The testimony as summarized *supra* supplies sufficient evidence of defendant's intent to cause physical injury to his wife. Moreover, the People introduced sufficient evidence of physical injury. In particular, the record establishes that the victim sustained a lacerated artery, which required sutures to close and left a permanent scar, and a depressed nasal fracture. The extent of the injuries was established by medical testimony (cf. *People v McDowell,* 28 NY2d 373). Defendant next contends that the active role assumed by the Trial Judge deprived him of a fair trial. In this regard, the record reveals that during the course of the trial, the Trial Judge solicited objections from the prosecutor, disallowed defense questions in the absence of objection, and questioned witnesses. A review of the record reveals that the great bulk of the Trial Judge's complained of participation was properly directed to clarification of the issues and restriction of the proof to reasonable bounds by the exclusion of irrelevant considerations (see *People v Jamison,* 47 NY2d 882, 883; *People v De Jesus,* 42 NY2d 519, 523). The present record reveals neither the extensive prejudicial questioning condemned in *People v Yut Wai Tom,* 53 NY2d 44, 58-61) or the frequent caustic remarks condemned

in *People v De Jesus* (*supra*). Accordingly, based on the record as a whole, the conduct of the Trial Judge did not preclude the jury from arriving at an impartial judgment on the merits (*People v Moulton*, 43 NY2d 944). In a seemingly inconsistent argument, defendant contends that he was denied his right of self-representation, and also denied effective assistance of counsel by a failure of the Trial Judge to ascertain that defendant appreciated the risks of self-representation before allowing defendant to conduct the examination of certain witnesses. Defendant's suppression hearing, held prior to trial, opened with County Court noting that the hearing was being held in the interests of justice despite the fact that defendant, "who has continuously refused to accept representation by counsel", failed to make the necessary motion. County Court also at that time entered into a discussion with defendant concerning the advisability of representation by counsel. In part, County Court stated: "From time to time, Mr. Hazen, you have appeared in this court, the court has advised you of the difficulties and the problems that you will face without representation by counsel." And, after a lengthy discussion, County Court concluded: "It's still the Court's feeling that you would be better served, sir, if you would retain counsel, but that's up to you, sir, you have got to make your own decision. And it is your decision to go *pro se*, is that correct, sir?" The suppression hearing was held with defendant representing himself *pro se*. Defendant's trial, however, commenced with defendant being present with counsel. Defendant's counsel explained, in answer to trial court's question, that: "[defendant] would present to the Court any preliminary motions which he made. Once the jury is seated, your Honor, I will represent Mr. Hazen, with the exception he stated that if he feels that an item is important, he would ask me to so represent that I would approach the bench, and whether you saw fit and in a given instance, he would make an application to state his position". Pursuant to defendant's desire, the trial court, in its discretion, allowed defendant to embark on a course of hybrid representation (see *People v Powell*, 98 Misc 2d 460, 461). Specifically, defendant made pretrial motions, conducted cross-examination of three prosecution witnesses, with counsel serving in an advisory capacity. Counsel examined the first two defense witnesses, defendant examined the third. Counsel then examined defendant. The final witness called by defendant was his wife, Jane Hazen, who had previously testified for the prosecution. The Trial Judge refused to allow defendant to examine her. The direct examination of Mrs. Hazen was, therefore, conducted by counsel. We are unable to ascribe error to the trial court's handling of the instant matter. First, in light of the discussions concerning the risks of self-representation the court had with defendant at the suppression hearing and before, there is no merit to defendant's assertion that the court failed to ascertain if he appreciated the risks of self-representation. Rather, the record demonstrates that defendant's decisions to personally examine certain witnesses was made knowingly and intelligently (see *People v Mirenda*, 57 NY2d 261, 266-267). Defendant's argument that he was denied the right of self-representation because the court did not allow him to examine his wife is also without merit. The trial court, within its discretion, allowed defendant to embark on a course of hybrid representation. Defendant, represented by counsel, had no constitutional right to act as cocounsel (see *People v Richardson*, 4 NY2d 224, 228, cert den 357 US 943; see, also, *People v Mirenda*, 57 NY2d 261, *supra*). To the extent that such an arrangement was permitted in this case, it was within the discretion of the trial court and no constitutional right was implicated by its refusal to allow defendant to conduct the direct examination of his wife (see *United States v Sacco*, 571 F2d 791, cert den 435 US 999). Defendant contends that improper questioning and summation by the prosecution deprived him of a fair trial.

Assuming that these assignments of error have been preserved for review, we find that due to the overwhelming evidence of guilt any error in this regard must be deemed harmless (see *People v Crimmins,* 36 NY2d 230, 242). We have examined defendant's remaining contentions and find them to be without merit. Judgment affirmed. Sweeney, Kane, Casey and Weiss, JJ., concur.

Mahoney, P. J., concurs in a separate memorandum. Mahoney, P. J., (concurring). Although I concur with the result reached by the majority in this case, I write separately for the purpose of distinguishing my reasons for rejecting one of the arguments raised by defendant. Defendant contends that he was denied his constitutional right to the effective assistance of counsel by the trial court's failure to ascertain on the record that defendant appreciated the risks of self-representation. Under the facts of this case, in which defendant's trial began while he was represented by counsel and he was then allowed to participate in his defense by cross-examining certain witnesses, I see no reason to rely, as does the majority, on conversations between the trial court and defendant at the time of his suppression hearing to satisfy the court's obligation to warn defendant of the risks associated with self-representation. Any conversations involving proceedings prior to the trial itself are, in my view, irrelevant. Rather than proceeding with his defense at trial alone, defendant was allowed to join forces with his lawyer in the management and presentation of his defense. As such, defendant received all of the benefits of representation by counsel. Simply stated, he did not need to be warned of the risks associated with self-representation because he was not, in fact, proceeding in his defense at trial without counsel (see *Bontempo v Fenton,* 692 F2d 954, 960; contra *United States v Kimmel,* 672 F2d 720, 721).