**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George ROBINSON,
Defendant-Appellant.**

No. 83–2942.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1985.

Decided Jan. 29, 1986.

Joseph Beeler, Miami, Fla., for defendant-appellant.

Joseph P. Stadtmueller, U.S. Atty., Lawrence O. Anderson, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before BAUER and COFFEY, Circuit Judges and ESCHBACH, Senior Circuit Judge.

BAUER, Circuit Judge.

Defendant, George Robinson, appeals from his criminal conviction for conspiracy to possess and distribute, and actual possession and distribution of, cocaine. He contends the trial court erred by allowing him to make his own statement to the jury during closing argument, by admitting the statements of two non-testifying co-defendant/co-conspirators into evidence, by refusing either to allow him to impeach the statements of the two non-testifying co-defendants or to grant severance, and by refusing to give appropriate orders to allow him fuller opportunity to examine the prosecution's scientific evidence. We reject Robinson's bases for appeal and affirm the district court's judgment.

I.

Robinson was charged with and convicted of conspiracy to violate United States drug laws by possessing heroin and cocaine, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He was also charged with and convicted of two counts of possession with intent to distribute, and distribution of, cocaine in violation of the same statutory sections. Robinson failed to appear for sentencing, and a bench warrant was issued for his

arrest. After being returned to custody, Robinson was sentenced to fifteen years imprisonment for each of the three counts, the sentences to run concurrently. Robinson was also given a special parole term of three years for each of the possession and distribution counts, and was fined twenty-five thousand dollars on the conspiracy count. This appeal followed.

## II.

Robinson's primary basis for appeal is that the trial court erred in failing to adequately apprise him of the dangers of making his own statement to the jury. We disagree.

### A.

Robinson was represented by counsel throughout the proceedings below. After Robinson's attorney had given more than an hour of closing argument, however, Robinson, after consulting his attorney, elected to make his own statement to the jury. The judge allowed Robinson to address the jury after determining that Robinson and his counsel had previously discussed the matter. After Robinson finished his statement, the trial court judge gave Robinson and his counsel opportunity to confer and decide whether Robinson's attorney should finish his closing argument. Robinson, with his attorney's acquiescence, declined the opportunity. Robinson was represented by counsel during the remainder of the trial, for post-trial motions, at sentencing, and on appeal.

### B.

■ We do not treat this case, as Robinson suggests we should, as one of waiver of counsel. The sum and substance of what occurred below was that Robinson was allowed to make an unsworn statement to the jury without fear of cross-examination or of prosecution for perjury. Such statements were a common practice at one point in the development of our Anglo-American criminal procedure. *See, Ferguson v. Georgia*, 365 U.S. 570, 582–86, 81 S.Ct. 756, 763–65, 5 L.Ed.2d 783 (1961).

They were instituted to counteract the harshness of the rule disqualifying a criminal defendant from testifying on his own behalf. *Ferguson* at 582, 81 S.Ct. at 763. Consequently, the practice was generally abandoned with the abolition of that disqualification. *Ferguson* at 586, 81 S.Ct. at 765. Where the privilege of making such statements to the jury coexists with the right to testify under oath on one's own behalf, the procedure operates to the advantage of the defendant and cannot be said to deny constitutional rights, *Ferguson* at 599–600, 81 S.Ct. at 771–72 (Frankfurter, J. concurring), especially when the privilege is exercised with the advice and consent of counsel. *Ferguson* at 596, 81 S.Ct. at 770; *Bontempo v. Fenton*, 692 F.2d 954, 959–61 (3d Cir.1982), *cert. denied*, 460 U.S. 1055, 103 S.Ct. 1506, 75 L.Ed.2d 935 (1983).

The record simply does not reflect a waiver of counsel by Robinson. The record does reveal that Robinson, after discussing the matter with his attorney, elected to make his own statement to the jury during the remainder of the time allowed for closing argument, but apparently no one at trial understood this as a waiver of representation. Robinson emphasized in his statement to the jury that he thought the defense provided by his attorney was "a superb job;" he explained that he was making his own statement simply because "sometimes a person has to stand up for himself." Trial Tr., Feb. 5 and 6, 1979, p. 96. Robinson's attorney consented to the statement, was present during the delivery of the statement, and continued to represent Robinson after the statement for the remainder of trial, for post-trial motions, and for sentencing. Even the government did not think that during the statement Robinson was without representation and thus more vulnerable. The government was unhappy with the judge's decision to allow Robinson to make an unsworn statement to the jury that would not be subject to cross-examination, and called for a discussion outside the presence of the jury to

attempt to limit the content of Robinson's address.

■ Nowhere, except in the mind of Robinson's appellate counsel, is there evidence that Robinson intended to proceed, or did proceed, without the advice and guidance of an attorney. We, therefore, follow the holding in *Bontempo v. Fenton*, 692 F.2d 954, 959–61 (3d Cir.1982), *cert. denied*, 460 U.S. 1055, 103 S.Ct. 1506, 75 L.Ed.2d 935 (1983), and the dicta in *Ferguson v. Georgia*, 365 U.S. 570, 596 and 599–600, 81 S.Ct. 756, 771–72, and 5 L.Ed.2d 783 (1961), and find that Robinson's statement to the jury, made with the guidance of counsel, did not entitle him to the admonitions required for a knowing and intelligent waiver of counsel.

### III.

Robinson also argues that admission into evidence of the out-of-court declarations of two non-testifying co-conspirators violated his Sixth Amendment right of confrontation even though the statements were admitted in accordance with Rule 801(d)(2)(E) of the Federal Rules of Evidence. This question is squarely settled against Robinson in this circuit and needs no discussion. *See United States v. Molt*, 758 F.2d 1198, 1199 (7th Cir.1985).

### IV.

Robinson next argues that the trial court judge should have allowed Robinson to impeach the credibility of two non-testifying co-conspirators whose out-of-court declarations were admitted into evidence, or should have granted severance. Again, we disagree.

### A.

The two co-conspirators whose statements were admitted against Robinson were also co-defendants. After trial had begun, Robinson's counsel advised the court that he intended to impeach the credibility of the co-conspirators by presenting evidence of prior convictions. Robinson's counsel also informed the court that attorneys for the co-defendants/co-conspirators intended to impeach Robinson's credibility in the same manner. Robinson's attorney further stated that as soon as the impeachment was accomplished, all three counsel would move for mistrial or severance.

The court reviewed the criminal records of the co-defendants,[1] heard arguments from both sides, and weighed the value of admitting the prior crimes evidence against the prejudice it would cause all defendants. The court evaluated this information in light of the facts of the case and the circumstances surrounding the statements. The court noted the tension between allowing impeachment and protecting the defendants from prejudice and then denied all co-defendants/co-conspirators permission to impeach the other co-defendants/co-conspirators' credibility with prior crimes evidence, denied severance, and denied the ensuing motion for mistrial.

### B.

Robinson would certainly, in general, be allowed to impeach the credibility of non-testifying co-conspirators with evidence of prior crimes. Federal Rule of Evidence 806 allows impeachment of the credibility of a declarant of an 801(d)(2)(E) statement as if that declarant had testified as a witness. Rule 609 allows impeachment of a witness's credibility with evidence of certain prior crimes. Fed.R.Ev. 609(a).

Problems arise, however, when the co-conspirator/declarant whose credibility is subject to attack by evidence of prior crimes is also a co-defendant. There is a danger of prejudicing the presumption of innocence of that co-defendant by admission of evidence of his prior crimes, such evidence being generally inadmissible to show the character or guilt of the co-defendant. Fed.R.Ev. 404(b).

■ One solution to this problem is to admit the evidence of prior crimes but in-

---

**1.** One co-conspirator had prior convictions for attempted murder, armed robbery, and endan- gering safety. The other had convictions for attempted murder and possession of marijuana.

struct the jury that the evidence is to be considered only to assess the credibility of the declarant and not as evidence of the declarant/co-defendant's propensity to commit the crime in the instant case. *United States v. Bovain,* 708 F.2d 606 (11th Cir.1983), *cert. denied,* 464 U.S. 898, 104 S.Ct. 251, 78 L.Ed.2d 238 (1983). Instead, the trial court judge in this case pursued a course which is, on balance, more favorable to defendants than the *Bovain* solution. Weighing the value to each co-defendant of being able to impeach the credibility of the others against the prejudice to each of having his criminal convictions before the jury, the judge elected to protect the defendants' presumption of innocence by refusing to allow impeachment with evidence of prior convictions.

This decision of the trial judge, more favorable to the defendants than the *Bovain* solution, was not error. We have no doubt that if the trial judge would have allowed impeachment with a limiting instruction to the jury as in *Bovain,* Robinson would be before this court arguing that this alternative solution was error. These difficult decisions are entrusted to the sound discretion of the trial court, and we will not disturb them without a showing of abuse. *United States v. Hedman,* 630 F.2d 1184, 1200 (7th Cir.1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981); *United States v. Papia,* 560 F.2d 827, 840 (7th Cir.1977), *cert. denied, sub nom. Stillman v. United States,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983).

We are not deaf to the argument that when a choice must be made between allowing impeachment of non-testifying co-defendants' credibility with evidence of prior crimes and protecting those co-defendants from prejudice, the decision should be made by the co-defendants themselves if they all agree that impeachment is more valuable than the resulting prejudice is detrimental. In this case, however, the co-defendants were not making this carefully calculated choice but were attempting to force the court into granting severance. The argument of all defendants was that they should be allowed to impeach the statements of their co-conspirators and should also be protected from prejudice by being granted separate trials.[2] They were erroneously assuming that admission of the prior crimes evidence would automatically entitle them to severance and were not carefully weighing the costs of proceeding to verdict in this trial with evidence of their prior crimes before the jury. Thus, we are not faced with a case in which after measured deliberation all co-defendants elect to impeach each other's credibility rather than withhold their respective criminal records from the jury.

### V.

Finally, Robinson argues that as a result of several orders by the trial judge, Robinson was given inadequate opportunity to examine and rebut the prosecution's scientific evidence. Once more, we disagree.

---

**2.** Robinson's argument concerning severance is somewhat confused. He attempts to argue that he should have been allowed to impeach the statements of his co-defendants *or* granted severance. To the extent that Robinson proposes these as alternative solutions to what he identifies as "the Confrontation Clause problem", we fail to see the force of his argument for severance. To the extent that Robinson is arguing that he should have been allowed to impeach his co-conspirators *and* granted severance to avoid the prejudicial effect of the prior crimes evidence, we have already determined that the trial judge's refusal to allow impeachment was within his discretion and not error. Furthermore, Robinson himself relies on the *Bovain* case which allowed one co-defendant to im-peach another co-defendant's out-of-court statements by evidence of prior convictions and did not grant severance. *United States v. Bovain,* 708 F.2d 606 (11th Cir.1983). To the extent that Robinson attempts to make a case for severance independent of the admission of prior crimes evidence by relying on the "mutually antagonistic defenses" standard, suffice it to say that we do not find the co-defendants' defenses to be "so antagonistic that 'the acceptance of one party's defense will preclude the acquittal of the other'" as required by the well-established test in this circuit. *United States v. Hendrix,* 752 F.2d 1226, 1232 (7th Cir.1985), *cert. denied sub nom. Merritt v. United States,* —— U.S. ——, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985).

## A.

One of Robinson's defenses at trial was that the government had not adequately proved that the substances in evidence alleged to be cocaine were in fact cocaine. Robinson claims that he was precluded from adequately examining the competence of the government's chemist as well as his equipment, techniques, and results.

Specifically, Robinson alleges four separate errors. He claims that (1) his cross-examination of the government's chemist regarding that chemist's qualifications was unreasonably curtailed, (2) the government failed to comply with a discovery order to produce computer programs used to chemically analyze the substances in evidence, (3) it was error to admit evidence of chemical test results because the evidentiary samples had been tested against a known standard of cocaine and there was inadequate foundational evidence that the standard was itself cocaine, and (4) Robinson was given insufficient time to analyze chemical test results turned over to him in discovery one month before trial.

## B.

 None of Robinson's objections amount to reversible error. Robinson's allegation that his cross-examination of the government's chemist was unreasonably curtailed is completely without foundation. On the contrary, we commend the trial judge for his patience with Robinson's counsel. The government's failure to produce the computer program was insufficient by itself to require exclusion of the chemical test results or to fatally prejudice Robinson's case. *United States v. Bastanipour,* 697 F.2d 170, 176–77 (7th Cir.1982), *cert. denied,* 460 U.S. 1091, 103 S.Ct. 1190, 76 L.Ed.2d 358 (1983). Robinson's argument that there was insufficient evidence of the chemical make-up of the "standard" against which the evidentiary substances were compared for identification is also without merit. The government's chemist testified that he was able to recognize the identity of the standard as cocaine by the characteristic test results. Tr. vol. XXII, p.

1096. He also testified that he was familiar with the known test values for cocaine. Tr. vol. XVI, p. 1443. Finally, we find that one month was not so short a time for Robinson to analyze the test results that the judge's refusal to grant Robinson an extension can be characterized as an abuse of discretion. In sum, the government's failure to produce the computer program was the only defect shown by Robinson, and it is settled in this circuit that this alone is not enough to be reversible error. *United States v. Bastanipour,* 697 F.2d 170, 177 (7th Cir.1982).

## VI.

For the foregoing reasons, the judgment of the district court is hereby in all respects AFFIRMED.