George **ROBINSON**, Plaintiff–Appellant,

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 88–2742.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 30, 1990.
Decided March 20, 1990.

Joseph Beeler, Miami, Fla., for plaintiff-appellant.

---

James L. Santelle, Matthew L. Jacobs, Asst. U.S. Attys., John E. Fryatt, U.S. Atty., Stephen A. Ingraham, Office of the U.S. Atty., Milwaukee, Wis., for defendant-appellee.

Before CUMMINGS and POSNER, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Petitioner George Robinson appeals the dismissal of his section 2255 habeas corpus petition. He argues that the district court erred when it held that Robinson did not waive assistance of counsel in his drug conspiracy and possession trial when he made a *pro se* statement to the jury during closing arguments.

## I.

Robinson was indicted in 1978 and charged with possession of and conspiracy to distribute cocaine and heroin. A four-week jury trial was held in early 1979 and Robinson was convicted on a number of the charges. Robinson did not appear for sentencing, but was eventually returned to custody and sentenced in 1983. He received concurrent fifteen year terms, a fine, and a special parole term on his various convictions.

Several exchanges crucial to the waiver issue occurred during the close of the trial on the afternoon of February 5, 1979 and the morning of February 6, 1979. Robinson's attorney, James Shellow, began his closing argument at approximately 3:20 p.m. on February 5th. At approximately 4:40 p.m., the following exchange occurred:

THE COURT: Why don't you mark your place, Mr. Shellow.

The jury has been listening attentively for about an hour and 20 minutes or longer, so we have to give them a little recess. But I think before we do, I'd like to have some discussion as to the scheduling. I notice that as I see it, I have some idea of what Mr. Shellow is going to argue about. You probably will need another hour and a half.

MR. SHELLOW: I think so, sir.

THE COURT: Or longer. And the Government needs some time, and the Court will need an hour....

....

I think the best judgment is to ask you to come in tomorrow morning at 9:00 a.m., and we'll finish tomorrow....

The next morning, at approximately 9:30 a.m., the jurors were called back into the courtroom and the following occurred:

THE COURT: Good morning, ladies and gentlemen of the jury. Please be seated.

MR. SHELLOW: Yes. Mr. Robinson has informed me this morning he has elected to give the balance of the summation himself.

MR. ROBINSON: May I have your permission?

THE COURT: You don't wish to finish your statement, Mr. Shellow?

MR. SHELLOW: He doesn't wish me to, Your Honor.

THE COURT: It is a free country.

MR. ROBINSON: Thank you. Good Morning, Your Honor. Good morning, jury. Mr. Attorney.

I'd like everybody to understand that I feel that my lawyer did a superb job in defending me, but I feel that sometime[s] a person has to stand up for himself and defend himself sometime[s] because of certain situations that cause him to speak out for himself.

Robinson then proceeded to summarize his previous testimony while on the stand, question the veracity of a prosecution witness and challenge the government's actions in his arrest and prosecution. During the course of his statement, Robinson made a number of admissions and incriminating statements. For example, he stated that he had been "coached" and "briefed" by his attorney when he took the stand earlier in the trial; that he was not a "good citizen" or a "good businessman"; that the prosecution had completely discredited his only witness; that it was unfair to arrest him two years after he committed the crime; that the government gave up four different opportunities to arrest him and instead let him continue committing more

crimes to increase his potential sentence; that the substances in question were drugs—something Shellow had contested during trial; and that he did not want or need any pity from the jury. He also told the jury to disregard the "chemistry defense"—a theory Shellow had developed over the course of the trial that was intended to show both that Robinson had been framed by the government and that the government had failed to prove that the drugs were truly controlled substances under the applicable statutes. After Robinson finished, the following exchange occurred:

THE COURT: Thank you, Mr. Robinson.

Now, I would like to give Mr. Robinson and his attorney time to confer to see whether or not Mr. Shellow will have permission to continue his argument.

MR. ROBINSON: No sir.

THE COURT: Don't you want a little time to confer?

MR. ROBINSON: No. That is it.

THE COURT: Do you concur in that, Mr. Shellow?

MR. SHELLOW: As you said before, Your Honor, it is a free country. I am not on—the man on trial. This is the man who makes the decision.

THE COURT: All right. Does the Government have any response?

MR. ANDERSON: We do your honor....

The government then gave its rebuttal argument to the jury. In his statement, the prosecutor addressed, among other things, the statement Robinson had just made to the jury, questioning apparent gaps in Robinson's argument.

This episode, which is the basis of the claim of waiver in this case, is not to be viewed in isolation. Earlier it had been established that Robinson actively participated in the trial after talking to his attorney. The jury had been excused for an offer of proof when the following exchange occurred:

MR. SHELLOW: Mr. Robinson would like to address the court on this matter, and I said of course the court would always be pleased to hear from him.

THE COURT: Well, I, I, I'm pleased to hear from any defendant, but I always tell the defendant you better talk to your lawyer first.

MR. ROBINSON: I did talk to my lawyer.

MR. SHELLOW: I said it was perfectly all right.

Robinson then proceeded to argue that the witness was not credible and that Robinson should be allowed to impeach the witness' credibility. The judge agreed and told Robinson that Shellow would be allowed to do so on cross-examination.

Robinson pursued a direct appeal to this court, and we affirmed his conviction in *United States v. Robinson*, 783 F.2d 64 (7th Cir.1986) (*Robinson I*). One of the alleged errors he presented was that he waived assistance of counsel without any advice or guidance when he decided to finish closing arguments himself. We rejected this argument, holding that no waiver had occurred: "We find that Robinson's statement to the jury, made with the guidance of counsel, did not entitle him to the admonitions required for a knowing and intelligent waiver of counsel." *Id.* at 67.

After his direct appeal, Robinson filed a section 2255 petition, arguing that a complete record had not been presented to the *Robinson I* panel. Robinson argued that he did not receive guidance from Shellow on his decision to address the jury and attached a copy of Shellow's affidavit that supports Robinson's position. The district court denied his petition, stating that the panel in *Robinson I* would not have changed its decision on the waiver issue even if it had known that Robinson failed to consult counsel before addressing the jury because there were other factors supporting a finding that no waiver occurred.

The only issue on appeal is Robinson's sixth amendment waiver of assistance of counsel claim.

II.

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For

this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1022–23, 82 L.Ed. 1461 (1938)). The defendant should therefore be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). Petitioner argues that he waived his right to counsel when he insisted on giving the remainder of his attorney's closing argument. Robinson argues that his "impromptu statement" to the jury the following morning was a "substitute" for Shellow's closing. The government, however, contends that Robinson merely gave his own supplement to his attorney's closing argument, and that no waiver occurred. We are not faced with a traditional waiver case where the defendant chooses early on in the proceedings to represent himself and then later complains that he was not warned of the risks involved. At best the facts in our case come under a line of cases involving a partial waiver of counsel. *See, e.g., Bontempo v. Fenton,* 692 F.2d 954, 964 (3d Cir.1982) (Sloviter, J., dissenting), *cert. denied,* 460 U.S. 1055, 103 S.Ct. 1506, 75 L.Ed.2d 935 (1983). These cases, however, largely involve the "stand-by" counsel scenario: the defendant decides before trial to go it alone, the court orders trial counsel to be prepared to assist the defendant during the trial, and eventually both the defendant and counsel conduct portions of the trial. *See, e.g., United States v. Kimmel,* 672 F.2d 720, 721 (9th Cir.1982); *United States v. King,* 582 F.2d 888, 889 (4th Cir.1978); *Maynard v. Meachum,* 545 F.2d 273, 275–76 (1st Cir.1976). After the defendant is convicted, he raises ineffective waiver of counsel as a ground on appeal.

Robinson cites no cases, and we were unable to find any, that find a waiver of counsel on facts similar to those in this case. Here, Robinson was represented throughout a four week jury trial by an experienced trial attorney. The trial judge considered Shellow to be a "very able lawyer" and, at oral argument, Robinson's appellate attorney stated that Shellow had a "superb reputation" in the Milwaukee legal community. Shellow demonstrated the extent of his representation of Robinson in his affidavit:

> I represented George Robinson throughout the pretrial stage, filing numerous pretrial motions. I conducted jury selection, delivered an opening statement, and fully represented Mr. Robinson throughout the Government's case-in-chief, Mr. Robinson's own defense case, and the Government's rebuttal. I submitted jury instructions to the Court and participated in the charge conference.

Any waiver of counsel, if one occurred, involved solely the closing argument phase of the trial, not the overall assistance of counsel at trial. Of course, closing argument "is a basic element of the adversary factfinding process in a criminal trial." *Herring v. New York,* 422 U.S. 853, 858, 95 S.Ct. 2550, 2553, 45 L.Ed.2d 593 (1975). In *Herring* the Court noted that "no aspect of . . . advocacy [in a criminal trial] could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment." *Id.* at 862, 95 S.Ct. at 2555. But Robinson was not deprived of a closing argument. Shellow gave an hour and a half of summation before Robinson gave his statement. Shellow presented and developed the central theory of the defense, namely, that Robinson was framed by the government. The panel in *Robinson I* characterized Robinson's "closing" as merely an "unsworn statement [made] to the jury without fear of cross-examination or of prosecution for perjury." *Robinson I,* 783 F.2d at 66. While Robinson takes issue with this characterization by pointing out that he had taken the stand earlier and had already been subject to cross-examination, it is clear that Shellow gave a substantial portion of the defense's theory before Robinson gave his unsworn statement to the jury.

Even if it could be said that Robinson was deprived of assistance of counsel for the purpose of closing argument, however, it is not clear that this type of limited deprivation violates the sixth amendment. As noted earlier, no cases are on point, but two cases provide some guidance. In *Bontempo v. Fenton, supra,* the Third Circuit held that the defendant did not waive assistance of counsel. In *Bontempo,* the trial had come to an end and the judge was instructing the jury when the defendant began complaining that he had not been afforded a fair trial. In an attempt to assuage the defendant, the trial judge offered the defendant an opportunity to retake the stand or give a statement to the jury. After consulting with his attorney outside the courtroom and then being encouraged by his attorney to make the statement after returning to the courtroom, defendant spoke to the jury. The court held that no waiver occurred because "[h]is decision to address the jury was taken with the approval of his experienced counsel." 692 F.2d at 961.

Of course, our case differs in a number of ways from *Bontempo.* First, Robinson apparently did not consult with Shellow before making his decision; according to Shellow, Robinson announced his intentions and Shellow simply relayed the message to the judge.[1] And while there may be some question whether Shellow acquiesced in Robinson's decision, the record contains nothing to suggest that Shellow encouraged Robinson to speak to the jury. Further, defense counsel in *Bontempo* gave a

complete summation to the jury before defendant rose to speak. Also, defendant in his *pro se* statement did not foreclose a theory of defense as Robinson arguably did. In fact, the court in *Bontempo* noted that defendant may have "fared better" because he presented excludable argument to the jury to which the prosecution did not object. In our case, Shellow had not given a complete summation and Robinson offered very little, if any, helpful information to the jury.

Despite these numerous differences between the cases, Robinson, like the defendant in *Bontempo,* has failed to prove waiver. As the majority in *Bontempo* noted, even if "Bontempo's action amounted to a 'partial waiver of his right to counsel'.... the factual situation is quite different.... [when a defendant is] represented throughout by counsel of his choice." *Id.* at 961 n. 6.[2] Shellow represented Robinson at every stage of the trial, did not object to Robinson's plan, was present during Robinson's statement, did not object to Robinson's decision either to change the theory of defense or forego the remainder of Shellow's closing statement, and represented Robinson during subsequent stages of the case. These were among the same factors relied upon by the *Robinson I* panel. *See* 783 F.2d at 66. There simply was no waiver of counsel—as that term has come to be understood—under the facts in this case.

A second similar case is *State v. Franklin,* 714 S.W.2d 252 (Tenn.), *appeal dismissed,* 479 U.S. 979, 107 S.Ct. 563, 93

---

**1.** Shellow states in his affidavit: "I did not undertake to advise [Mr. Robinson] of the risks involved ... or the consequences.... I did not encourage him to choose this course, nor did I attempt to dissuade him from pursuing it. We had no discussion whatsoever concerning the merits of his proceeding on his own."

We note in passing, however, that this is a curious statement for someone of Shellow's experience and reputation to make. It is possible that Robinson and Shellow's relationship had deteriorated over the course of the trial and that Shellow felt that an attempt to advise Robinson would have been futile. Robinson's appellate counsel stated at oral argument, however, that Shellow simply "made a mistake" in not advising Robinson on his request to make a statement to the jury. It could also be that Shellow

was attempting to preserve an "error" for appeal. *Cf. United States v. Moya–Gomez,* 860 F.2d 706, 739 (7th Cir.1988). For purposes of this opinion, however, his motivation is unimportant. Shellow's failure to advise Robinson is irrelevant to our holding in this case that no waiver of counsel occurred.

**2.** Judge Sloviter, dissenting in *Bontempo,* wrote that the defendant's *pro se* summation should have been regarded "as nothing less than a partial waiver of counsel" which is "no less hazardous than a full waiver of counsel." 692 F.2d at 964. She therefore concluded that the trial judge was required to afford the same inquiry under either type of waiver to determine whether the defendant was waiving his rights knowingly and intelligently.

L.Ed.2d 569 (1986). In *Franklin*, the defendant insisted on giving a statement to the jury after one of his defense attorneys gave his final summation. The trial court permitted the defendant to make a statement, even though defense counsel objected, and the defendant proceeded to make a number of damaging remarks. After defendant finished, the other defense counsel gave a summation and then the prosecution was allowed rebuttal. In denying a motion for a new trial, the trial court judge stated on the record that he had observed the defendant in court during trial and from this observation had formed the opinion that defendant's waiver of counsel was made knowingly. *Id.* at 257. On direct appeal, the Court of Criminal Appeals reversed and ordered a new trial on the ground that defendant had not made a knowing and intelligent waiver. The Supreme Court of Tennessee reversed, holding that under state law the waiver analysis was inapplicable when the defendant was simultaneously represented by counsel and himself. *Id.* at 258. Characterizing the issue as neither full nor partial waiver of counsel, the court held that *Faretta* was inapplicable and the trial court was therefore not required to offer the standard warnings.

Like *Bontempo*, *Franklin* involved a case in which a full final argument was presented to the jury. Here, Robinson interrupted his attorney's summation at midpoint. As the court noted in *Franklin*, however, a defendant may manage his own defense, and a decision to disagree with counsel on a theory of defense is not a waiver of counsel. *Cf. id.* at 262. The importance of the *Franklin* case for our purposes lies in its characterization of the events that occurred: rather than finding a partial waiver, the court found a simultaneous representation. *Id.* at 258 ("At no time did [defendant] stand alone against the State's arsenal of attorneys unassisted by counsel for his defense."); *see also People v. Hazen*, 94 A.D.2d 905, 463 N.Y.S.2d 657, 661 (1983) (Mahoney, J., concurring) (arguing that no waiver occurred because defendant was represented throughout by counsel). This is essentially the interpretation that *Robinson I* took as well. *See* 783 F.2d at 66. Robinson asked for and was given an opportunity to testify before the jury without fear of cross-examination. Thus, Robinson did not waive assistance of counsel, he supplemented it.

### III.

Finally, while the focus of this appeal has been on the one incident which occurred during the summation period which followed a four week trial in which lawyer Shellow (recognized as highly capable) had represented Robinson, the stage had already been set for Robinson's personal participation. This occurred when Robinson chose to argue personally to the court and did so. No disturbance to the ongoing trial resulted.

If Shellow were not already aware of it as a result of the customary conferences before and after the trial and during its recesses, the earlier incident directly with the judge must have made it obvious to Shellow that his client was a strong-willed person who was determined to do things his own way. It also must have been obvious to Shellow that an open attempt to curb his client might well produce a more disrupting scene before the jury with a more disastrous outcome than would letting him speak.

The right to counsel is an important one in our constitutional scheme and must be carefully protected but it is not without limits. We are of the opinion that in this case the limit has been exceeded and that Robinson willingly forfeited the protection. In this case, Robinson has failed to show that a waiver of counsel occurred. The judgement of the district court denying the habeas corpus petition is therefore Affirmed.